# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| GIBSON BRANDS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:17-cv-01542 |
| | ) CHIEF JUDGE CRENSHAW |
| TRONICAL COMPONENTS GMBH, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

Gibson Brands, Inc., a Tennessee corporation, entered into multiple contracts with German companies Tronical Components GmbH, Tronical Solutions GmbH, and Tronical GmbH, all run by German citizen Chris Adams. When Tronical Components allegedly breached contracts with Gibson, the Tennessee company brought suit in this Court. The German defendants, however, would prefer to litigate this action in Germany. Before the Court are Defendants' Motions to Dismiss. (Doc. No. 18, 20.) For the following reasons, the Motions are denied.

I. Allegations

In 2015, Tronical Components requested that Gibson pre-pay for certain "G Force" tuner systems. (Doc. No. 1 at 3.) On July 24, 2015, the parties signed a Letter of Understanding, which indicated that Gibson paid Tronical Components over $1.7 million for the G Force systems at terms of $75,000 per week. (Doc. No. 1 at 3.) Tronical Components neither delivered the G Force systems nor returned the money. (Doc. No. 1 at 3.)

In 2016 and 2017, Gibson also attempted to buy other items from Tronical Components. (Doc. No. 1 at 4.) It would submit purchase orders based on price lists that Tronical Components

supplied to Gibson. (Doc. No. 1 at 4.) Tronical Components sent Gibson order confirmations on those purchase orders, and Gibson wired the agreed amount of money to Tronical Components. (Doc. No. 1 at 4.) However, rather than deliver the goods, Tronical Components sent Gibson invoices purporting to double the cost of each item. (Doc. No. 1 at 4.) Tronical Components has only delivered about $7,500 worth of items based on these purchase orders and has issued no refunds. (Doc. No. 1 at 4.)

Also in September 2016, Gibson wired Tronical Components $54,000 to fund tooling for a new tuner, called the "G Force II." (Doc. No. 1 at 5.) Gibson also wired $107,000 in May 2016 and $191,867 in September 2016 to develop and purchase these tuners. (Doc. No. 1 at 5.) Tronical Components stopped working on creating the tuners, has not delivered the tuners, and has not issued a refund to Gibson. (Doc. No. 1 at 5.)

Based on the foregoing, Gibson brings three breach of contract claims against Tronical Components, attempts to pierce the corporate veil against the remaining three defendants, and brings state law unjust enrichment and Tennessee Consumer Protection Act claims against all defendants.

II. Analysis

Defendants move to dismiss the case for (1) lack of personal jurisdiction; (2) improper venue; and (3) forum non conveniens. Gibson opposes dismissal.

A. Personal Jurisdiction

The essential personal jurisdiction question involves whether a foreign corporation can be brought into court in the United States when it negotiated with a United States company at least partially in the United States and agreed to deliver goods to the United States. The Court finds that it can.

2

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to file a motion to dismiss for lack of personal jurisdiction. "Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and the exercise of personal jurisdiction would not deny the defendant[ ] due process." Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002) (citing Mich. Coal. of Radioactive Material Users v. Griepentrog, 954 F.2d 1174, 1176 (6th Cir. 1992)). Tennessee's long arm statute provides that a Tennessee court may exercise jurisdiction over an out-of-state defendant on "[a]ny basis not inconsistent with the constitution of this state or of the United States." Tenn. Code Ann. § 20-2-214(6). Accordingly, the long-arm statute has been consistently construed to extend to the limits of federal due process. Gordon v. Greenview Hosp., Inc., 300 S.W.3d 635, 645 (Tenn. 2009).

Gibson has the burden of showing personal jurisdiction but "that burden is 'relatively slight' where, as here, the . . . court rules without conducting an evidentiary hearing." MAG IAS Holdings, Inc. v. Schmuckle, 854 F.3d 894, 899 (6th Cir. 2017) (citing Air Prods. & Controls Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 549 (6th Cir. 2007) (quotation omitted)). "To defeat dismissal in this context, [Gibson] need make only a prima facie showing that personal jurisdiction exists." Id. Nevertheless, "[i]n response to a motion to dismiss, the plaintiff may not stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction." Miller v. AXA Winterthur Ins. Co., 694 F.3d 675, 678 (6th Cir. 2012) (citing Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991)). Because the Court did not hold an evidentiary hearing, it may not weigh the declarations submitted by the defendants in its analysis. Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1263 (6th Cir. 1996) (citing Theunissen, 935 F.2d at 1459).

Gibson argues that Defendants are subject to specific personal jurisdiction in Tennessee. (Doc. No. 27 at 11.) For a court to exercise specific jurisdiction over a defendant, the plaintiff must prove: (1) the defendant purposefully availed itself of the privilege of acting in the forum state or causing a consequence in the forum state;[1] (2) the cause of action must arise from the defendant's activities there; and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968). "The key question is whether the defendant purposefully availed [itself]." Air Prods. & Controls, Inc., 503 F.3d at 550-51. A defendant "purposefully avails" itself "by engaging in activity that should provide 'fair warning' that [it] may have to defend a lawsuit there." Youn v. Track, Inc., 324 F.3d 409, 418 (2003) (quoting World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Here, two key allegations permit the Court to exercise personal jurisdiction over Defendants. First, Defendants entered into contracts to deliver goods to Tennessee, accepted money from a Tennessee corporation, but never delivered the goods. (Doc. No. 30 at 1-2.) This has a substantial effect on Tennessee residents, and should provide "fair warning" that Defendants would have to defend a suit in the State. Youn, 324 F.3d at 418. Merely "entering into a contract with a resident of the forum state" is not sufficient to establish purposeful availment. CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1265 (6th Cir. 1996). This includes situations when the nonresident

---

[1] Gibson argues that it only needs to prove Defendants purposefully availed themselves of the laws of the United States. This is the case under Federal Rule of Civil Procedure 4(k)(2), which acts as a "federal long-arm statute, [allowing] a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process." Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico, 563 F.3d 1285, 1295-96 (Fed. Cir. 2009). However, for the Court to hear a dispute under Rule 4(k)(2), the defendant cannot be "subject to personal jurisdiction in the courts of any state." Meriel Ltd. v. Cipla Ltd., 681 F.3d 1283, 1293-94 (Fed. Cir. 2012) (citing Synthes, 563 F.3d at 1293-94)). Because the Court finds that Defendants are subject to the personal jurisdiction of Tennessee, the Court does not analyze Gibson's claims under Rule 4(k)(2).

defendants negotiate in the forum state, Capital Dredge & Dock Corporation v. Midwest Dredging Company, 573 F.2d 377, 280 (6th Cir. 1978), and even sign the contract in the forum state, LAK, Inc. v. Deer Creek Enterprises, 885 F.2d 1293, 1301-02 (6th Cir. 1989). However, voluntarily agreeing to deliver goods to the forum state directs the defendant's actions into the forum state and provides fair warning that it may have to defend a lawsuit there.[2] (Doc. No. 18-1 at 107, 111, 114.) Indeed, it would make no sense if a defendant could purposefully avail itself to a state by delivering goods, but could avoid the state's laws by breaching the contract and failing to deliver the goods. See CompuServe, Inc., 89 F.3d at 1264-65 (finding the defendant purposefully availed himself to Ohio when the defendant chose to transmit software from Texas to Ohio). Because this was intended to be an ongoing relationship—after all, Gibson allegedly paid $1.7 million for the delivery of tuners—the Court finds the agreements to ship goods to Nashville combined with the acceptance of $1.7 million from a Nashville company are sufficient contacts with Tennessee to constitute purposeful availment. See Mohasco Indus., 401 F.2d at 385 (noting the importance of an ongoing relationship, as opposed to a "one-shot affair").

The second allegation that allows the Court to exercise personal jurisdiction over Defendants is that representatives from Defendants, including Adams himself, called Gibson in Tennessee and made fraudulent comments to induce the Tennessee company to contract with the German company. Neal v. Janssen, 270 F.3d 328, 332 (6th Cir. 2001). Indeed, under similar facts in Neal, the Belgian defendant never even visited Tennessee. Id. The Sixth Circuit still held that the Tennessee court could exercise personal jurisdiction over the Belgian defendant because the Belgian defendant's fraudulent inducement during phone calls to the Tennessee plaintiff

---

[2] In their reply brief, Defendants take issue with saying that they were going to deliver goods to Nashville. (Doc. No. 34-1 at 9.) However, the purchase orders clearly say that the "Delivery Address" is to "Gibson Guitar Corp." in Nashville. (Doc. No. 18-1 at 107, 111, 114.) The words Defendants cite, "ex work – Hamburg," appears to be a shipping method. (Doc. No. 18-1 at 112, 115.)

5

sufficiently put the Belgian defendant on notice that it could be subject to a lawsuit in Tennessee. Id. Here, Tronical Components' alleged fraudulent inducement directed at Gibson in Tennessee subjected the German company to the laws of Tennessee.

There is no real dispute as to the second two elements of personal jurisdiction. The breach of contract and fraud causes of action arise from Defendants' actions in Tennessee, and the contacts are substantial enough that it does not violate notions of due process to require the German defendants to litigate in Tennessee. Id. at 333. Instead, Defendants argue that forum selection clauses in two contracts, a September 2009 Letter of Intent signed by Tronical, Gibson, and Tectus Anstalt, and a June 2010 Master Professional Services Agreement signed by Tronical, Gibson, and Adams, should govern this dispute. (Doc. No. 19 at 15-16 (citing Doc. No. 18-1 at 25, 44.)) The Court focuses on the 2010 Master Professional Services Agreement because it "more formally" defined the agreement made in the 2009 Letter of Intent.[3] (Doc. No. 18-1 at 35.) This Agreement was between Tronical and Adams, collectively the "Contractor," and Gibson as the Customer. (Id.) The Contractor agreed to provide services as defined in future Statements of Work. (Id. at 36.) On October 15 of every year, Gibson would provide Tronical and Adams a list of projects anticipated for the upcoming year. (Id.) The parties agreed to litigate all disputes under the Agreement in Germany. (Id. at 44.)

While the Court is certainly open to arguments that the 2010 Master Professional Services Agreement governs the contracts at issue in this case, taking the facts in the light most favorable to Gibson, at this stage it appears that the 2010 Master Professional Services Agreement is signed by Tronical and have nothing to do with the later contracts between Gibson and Tronical

---

[3] Gibson and Tectus Anstalt agreed to form a separate contract outside of the Master Professional Services Agreement. (Doc. No. 18-1 at 35.)

Components, a separate entity. Indeed, Defendants concede that Gibson proposed adding Tronical Components to the Master Professional Services Agreement, but that never occurred. (Doc. No. 34-1 at 7.) The contracts Tronical Components allegedly breached do not incorporate or reference the Master Professional Services Agreement, do not have a forum selection clause, and are not statements of work. (Doc. No. 18-1 at 92-115.) The Letter of Understanding between Gibson and Tronical Components also does not contain a forum selection clause. (Doc. No. 18-1 at 117-18.) Tronical is only being sued as a result of allegations to pierce Tronical Components' corporate veil, not for breaching its own contracts with Gibson. (Doc. No. 1 at 6.) Therefore, at this stage, it does not appear that the June 2010 Master Professional Services Agreement would govern the separate contracts between Gibson and Tronical Components.

Accordingly, the Court finds that it may exercise personal jurisdiction over Defendants.

B. Venue

The burden of establishing venue falls on the plaintiff and the court may examine facts outside of the complaint but "must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." Gone to the Beach, LLC v. Choicepoint Serv., 434 F. Supp. 2d 534, 536-37 (W.D. Tenn. 2006). If the court finds that venue is improper, it has discretion to dismiss the case, under Federal Rule of Civil Procedure 12(b)(3), or transfer it to a district where venue is proper, under 28 U.S.C. § 1406. First of Mich. Copr. v. Branlet, 141 F.3d 260, 262 (6th Cir. 1998).

Here, Defendants are not residents of the United States. Therefore, they can be sued "in any judicial district." 28 U.S.C. § 1391(c)(3). Venue in the Middle District of Tennessee is proper.

C. Forum Nonconveniens

"Under the common law doctrine of forum non conveniens, a district court may decline to exercise its jurisdiction, even though the court has jurisdiction and venue." Hefferan v. Ethicon

7

Endo-Surgery Inc., 828 F.3d 488, 492 (6th Cir. 2016) (quoting Rustal Trading US, Inc. v. Makki, 17 F. App'x 331, 335 (6th Cir. 2001)). First, the Court must determine the degree of deference owed to the plaintiff's choice of forum. Id. at 493 (citing Makki, 17 F. App'x at 335-36). The defendant must then establish (1) that the claim can be heard in an available and adequate alternative forum and (2) the balance of private and public factors listed in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947) (superseded by statute on other grounds), reveals that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court. Duha v. Agrium, Inc., 448 F.3d 867, 873 (6th Cir. 2006) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256 n.23 (1981)).

Defendants base their forum nonconveniens argument on the forum selection clauses in the 2009 Letter of Intent and the 2010 Master Professional Services Agreement. (Doc. No. 21.) However, as analyzed above, Tronical Components is not a party to either of those contracts. Because Defendants based their argument on the forum selection clause, they did not analyze the factors in Gulf Oil Corp. (Doc. No. 21 at 11.) Accordingly, neither will the Court, and the Court will not dismiss the action on forum nonconveniens grounds.

The Court will enter an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE